Please the court. My name is Daniel Drake. I'm a lawyer from Phoenix, Arizona, representing Mr. Murphy. I'd like to reserve four minutes of my time for rebuttal, and I would, if the court will indulge, rest upon the pleadings on the discussion of the sentencing issues. That's fine. The first issue I want to talk about is probable cause, and probable cause consists of two components, probable cause to arrest. First, that the crime has been committed, and then what's most important here, second, that the individual to be arrested has committed that crime. In this particular case, the officers who went in to arrest defendant did not have the requisite knowledge. They did not know that the individual they were going to arrest was the renter of the vehicle. What I'd like to call your Court's attention to is in the excerpt of record, it's in the second volume, there are three pictures or photographs of the crime scene, an overview, and then what could be seen, were they looking at it. Those are at the second volume of the excerpt at page 244, 246, and 248. 244 is the overview, and it shows that one officer, the officer who actually affected the arrest, Jacobs, was between a fire station and a discount tire in the alley in a marked patrol vehicle. He had absolutely no view of the scene of arrest. The one officer who did was Sergeant Kaufman. Kaufman was in a parking lot just south of the church that appears in the photograph, and he had a view essentially of the last or very few feet of the back of a U-Haul truck. But he wasn't really looking at that. He was doing undercover work, correct? That wasn't his primary purpose, in other words. You're right. He did not start with that in mind. But he was watching the back of his truck, trying to see what was going on with it, saw somebody come out and get in, could not identify the individual from where he was. And the next time he saw this person come to the back of the truck and go out of sight, he gave the command to Officer Jacobs to roll, to go in and get him. And at that point, Jacobs turns on his lights. He's in a marked patrol vehicle with a push bar on the front end. And he comes up from around the fire station and into the parking lot and parks in such a fashion that he pins the defendant basically in the doorway of the U-Haul truck. The doorway was the driver's side door was open at that point, and the defendant was leaning into the truck. At that point, any reasonable person would believe that they were not free to ignore the police officers and to go about their business. And under those circumstances, Mr. Murphy was under arrest. Well, I thought the testimony was, is that Officer, what was his name? Jacobs. That he recognized the defendant. Yes, he did. And that's what he said. Before he arrested him. He, Jacobs said he was in the vehicle and got out of the vehicle to arrest him. All right? So Jacobs is in the vehicle. Jacobs also testified that he recalls hearing the name. He remembered he had some dealings with Murphy. It's undisputed that he knew Murphy from a prior encounter. And Jacobs testified that he recognized the defendant. But when he recognized the defendant, he had already had his lights activated and pinned the defendant into the vehicle, into the U-Haul truck. And so my point is that at that point, the arrest had occurred. Yes, he got out of the truck and physically laid hands on Mr. Murphy and put handcuffs on him. But that was, he'd already stopped him. What was reasonably suspicious about what this guy was doing to even trigger Sergeant Kaufman's interest? He observes a U-Haul truck in a parking lot adjacent to an apartment building. And somebody walks out of an apartment, walks to the back of the truck and walks away with some papers back into the apartment building. That happens in anybody else's neighborhood. Does that attract the attention of the police? I would say no. Now, I do believe there's going to be some evidence that you'll hear about that they had seen or thought they had seen this truck in this same parking lot before. All right? This or a similar truck. But even that, if you want to throw that in, doesn't take it to the point that you've got something suspicious. Well, that wasn't all that happened. He saw the truck. Didn't he make some telephone inquiries? Kaufman started making some inquiries about the truck. And this gets off into an area that's going to be difficult to parse out in the sense that the officers said certain things about when they made these calls. Some of the calls are not of record. Some of the calls, all we have is the time when the call stopped. It was argued extensively at trial court that the phone call that communicated the information was made or concluded, rather, a minute or so before Mr. Murphy was arrested. And actually, if you look at the testimony of one of the witnesses, Hepler, Hepler said, I would have told him the truck was overdue, but I never would have told him to go arrest some guy without talking to the office that actually rented the vehicle, because he may have painted the green on them. I don't know about that. And at the bottom, this is a misdemeanor. Yeah. And so at that point, there was no real suspicion that the individual, the unindicted individual, was the person who had rented the truck or possessed it, knowing it was overdue. Well, maybe I'm wrong, but I thought the district court found that the one officer learned that the truck was overdue. He understood under Arizona law that that was overdue for more than 72 hours. It had been overdue for a month. Correct? Yes. And that under Arizona law, that was – that appears to be a violation of Arizona. That triggered the misdemeanor or would trigger the misdemeanor. And he could see this truck in front of him. Correct. And then they see this individual. Why isn't that a – why isn't that opening up the back of the truck and going in and taking papers out? Why isn't that a fair probability that he's – you know, that he's associated with the truck and failed to return the truck? You're a month beyond the period of time when an individual rented the vehicle. So you've got, let's say, 30 days in there. Is the truck in Murphy's possession? Is it a reasonable presumption that it's still – or an inference that it's still in his possession? Might it be in somebody else's possession? Well, he's – they saw – did they see – is it Cowan or what was the name of the other guy? I never remember. Coffman, I believe. Coffman. Was it Coffman? Didn't Officer Coffman see him open the door to the truck? Yes. I understood it to be the side door of the truck. Is that right? Oh, no, not the side door. He couldn't – it's a roll gate. It's a big U-Haul, and the only way to access the storage compartment bed on it is by lifting up this gate. And that's what Coffman saw him do? That's what Coffman saw this individual do. He didn't see him in the cab of the truck because that was out of his sight. Pause a bit this way for a moment. What happens if instead of rolling in with lights going and pinning this guy in in front of the car, we have a situation like Washington where the officer simply drives up, gets out of the car, and engages the individual in some sort of a discussion? You know, let's talk a little bit about this truck. What are you doing with the truck? Who rented it? Who is it? That would have been a funded suspicion stop, or that would have been something other than a probable cause arrest that occurred here. That might have led to a different result. What we have here is a probable cause arrest that stops when this defendant is pinned in this area in the truck, and that's when any reasonable person would have thought they're not free to move. If I can then move on to the next argument. Yes. There are some issues regarding improper cross-examination, improper argument, and then an issue having to do with a motion in limine. The improper argument and cross-examination are more or less, being careful, conceded by the prosecution. They say that they should not have asked these questions in general. The motion in limine, however, had to do with, among other things, the introduction in evidence of resistance to arrest. The prosecution sought to argue it as it showed inference of guilty knowledge. And the net effect of that ruling, coupled with what happened in cross-examination and in closing argument, changed this from a case about whether an individual saw a gun, picked it up, put it in his pocket rather than leave it on the ground, whether he was reasonable in doing so, into a situation where, was he to be believed when he said, when he resisted arrest, when he testified differently than the police officer who arrested him, Officer Jacobs, and the case shifted its focus. The three elements that they had to prove to establish possession of a firearm. Breyer. Well, he stipulated the two of those elements, didn't he? And when he was up on the stand. So with that stipulation, what was it the government had to prove to complete their case? I think it was the first element, that he knowingly possessed it. And he got up and said he knowingly possessed it. And the first question. They weren't going to have a tough time proving that element in any event, were they?  Right. So his whole case was really about this defense that he raised. Yes. It should have been. It should have been. Well, that's what it was. He even got an instruction. Right. He did. But what you end up with is a cross-examination that, once it's established the three elements, that you possessed the gun, you traveled interstate commerce, the other, you know, made someplace else. Once he got that, they jumped right into this. And the question is, the officer was wrong when he said this. You heard what he said when he was up on the stand. He was wrong when he said that, wasn't he? Well, he might have been, you know. And the prosecutor kept at it until he got to the word that gives this Court so much trouble, he got to the word of lying. And he talked about the fact that in this particular case, these officers must have been lying. And did the defense counsel object?  So we would be for plain air, correct? You do. You do. And when I said the concession of the prosecution, what I meant was they don't concede that there was prejudice and that it affected the outcome, things of that sort. They will concede that they should not have made certain comments. All right. The ---- It was error that was obvious but not plain under Ninth Circuit case law. Is that correct? I would say it's plain error, Your Honor, in that there are at least four cases that talk about this, Combs, Geston, Nick Harrison is another one. They're in the materials, but I ---- since 1991, it's been fairly clear you shouldn't ask a defendant whether somebody else is lying. Right. And in a particular ---- in this case, where you've got only two people who testified about what went on, bear in mind now that nobody was in a position to see the front part of the truck where a defendant said that he found the gun and picked it up and So the only examination that the prosecution went after was this issue, did you resist arrest, didn't he ask you if you had guns, didn't he say something else, and isn't he lying when he says that? And that's what damaged the defense in this particular case. After all the elements had already been proved. Absolutely, yes. After the elements had been admitted on the stand. And so in that argument, my point is that the cross-examination, it was in a two-witness case, it's not strong evidence, it's not overwhelming evidence, it's not like some of these other cases where it's been a month-long trial and four witnesses have testified against the defendant and said he was drunk when he says he's not drunk. We saw him. He was drunk. That's Harrison, I believe. So what you've got here is a police officer and a defendant. And I think I need to sum up a little bit, but to go on to talk about If you want some rebuttal time, you better save what you've got. Okay, I will. Thank you. May it please the Court. My name is Carla Hodes-Selor. I represent the government. The district court properly denied the defendant's motion to suppress the evidence because there was probable cause to arrest the defendant. Here, Sergeant Kaufman, his attention was first drawn to the U-Haul truck when the defendant came out to the U-Haul truck, and it took him several minutes to undo the lock of the U-Haul truck. This area was a high-crime area. And the fact that the defendant was having so much trouble with the truck kind of raised Sergeant Kaufman's suspicions. Therefore, he called U-Haul. Why would that raise suspicions? What's so suspicious about trying to unlock the back of a U-Haul truck? Well, according to Sergeant Kaufman's testimony, he said he spent several minutes in trying to be able to undo this lock. It would probably take me, you know, an unduly amount of time to open up the back of a U-Haul truck. According to Sergeant Kaufman, given the fact that it was a high-crime area and this person came out there and was having this difficulty and spent several minutes trying to do it, he decided to follow up on it. He asked Officer Jacobs to – he called Officer Jacobs because Officer Jacobs had had testimony dealing with the recovery of stolen U-Haul trucks, and Officer Jacobs informed him how the process went, gave him the inventory number Sergeant Kaufman called U-Haul. U-Haul told him the truck had been rented February 19th, was due back on the 20th. It was now April 1st. The U-Haul representative gave him the defendant's name and date of birth. When Sergeant Kaufman gave all this information to Officer Jacobs, Officer Jacobs ran it in his mobile data unit in his car and recognized the defendant that he had had prior dealings with it. It was then when the defendant moved to the front of the cabin out of Sergeant Kaufman's view that he ordered Officer Jacobs to move in. When Officer Jacobs pulled up, he recognized the defendant. He clearly had probable cause to make the arrest at that point. When he pulled up, did he have his lights on? Yes, he did. But he had – Was he in with his car? Correct. And he had – Was he under arrest at that point? Yes. Was he in custody when he comes up with the lights flashing and corners him and blocks him? Right. Because the – He was under arrest. He was under arrest. Or he was in custody. Right. He would have – a reasonable person would not have felt free to leave at that moment, but there was probable cause at that point to – You're conceding that there was an arrest when Officer Jacobs just pulled in to the parking lot? Well, yes. I mean, there – yes, there was an arrest at that point when the lights were going up. A reasonable person might not have felt free to leave at that time, but there was probable cause at that point to support the arrest. Given the fact that the U-Haul representative – Not free to leave has something to do with custody, but it doesn't have anything to do with arrest. I'm sorry. Maybe I'm mistaken. I'm misspeaking. I apologize. He was – could – right, not feel free to leave, be in custody, but even if you were to determine that that was – That's custody, but that's not arrest, is it? No, but I'm saying even if the court were to deem that an arrest at that point, there was probable cause at that point to arrest him. Because given the fact that the truck was in the stolen status and Officer Jacobs recognized the defendant at that point – There was certainly a lot more probable cause for arrest after the recognition of him than there was when Kauffman was finding probable cause, you say, by looking at how he was opening the car and all that sort of thing. That is correct. I mean, Officer Jacobs, the fact that he recognized the defendant is even more reason for the probable cause, but there was still the probable cause to arrest the person, yes. He knew a William Marcus. Sorry, Judge. Go ahead. Go ahead. Well, I was trying to say that I just am astounded that you're conceding that there was an arrest when he pulled into the parking lot. I guess what I meant to be saying is even if this court were to determine that that was the point of arrest at that moment when he pulled in, even if the court were to find that that was the point of arrest, that there was probable cause at that moment to support that arrest. And the district court did not err in denying the motion to suppress on that basis. With respect to the prosecutorial misconduct, the prosecutor did err when he asked the defendant on cross-examination about the veracity of Officer Jacobs' testimony. Isn't that piling on at that point? I mean, you had an admission of all of the necessary elements in the record, correct? Correct. So what's the additive effect of multiple incidences, multiple, more than two incidences of prosecutorial misconduct? It was not the piling on. If you look at the number of, there were 12 pages of cross-examination of the defendant, and there were only three improper questions. And yes, these questions came after the fact that the defendant had admitted the elements of felon and possession, but it still, the government still had to prove its case, and it was going to its consciousness of guilt, the defendant's consciousness of guilt as to whether he arrested arrest, or whether he indeed resisted arrest, and whether he indeed denied having a weapon on him. And the fact of the matter is they found it in his back pocket, right? That is correct. All they had to have was the officer testify that it was found in his back pocket. Correct. The jury wasn't going to infer from that that he knowingly possessed the weapon? Right. I mean, that's correct. The main issue of this case was whether the defendant could prove all four elements of the necessity of defense, which he could not. And because the defendant could not prove the necessity of defense, any improper questioning by the prosecutor is harmless in this case and does not rise to the level of plain error. The defendant is unable to show that his substantial rights were affected. How is obvious error different from plain error? It was obvious error that it was clear that the prosecutor should not have asked that question. That's the case law. Plain error, you have the four elements of plain error, that it was plain, that it was clear, obvious, that it affected the substantial rights of the defendant, and that it ---- Warren's correction. Correct. I'm losing the exact wording I want on the fourth error, on the fourth prong of the plain error test. Excuse me. But so plain error has these two extra elements that go beyond the obvious error, that it was clear error. And so the defendant, because he's not able to meet the prong that it affected his substantial rights or the fourth prong of the error test, that is why he does not prevail on this ---- in this case. And that's because his necessity of defense really wasn't ---- he had a generous judge who gave him ---- Exactly. The judge even stated in settling instructions that he was erring on the side of caution. But he said the evidence was very scant, but he wanted to err on the side of caution, which is why he gave the necessity of defense instruction. If there are no other questions by the Court, I will submit the remaining issues on the brief. Thank you. Your Honor, I submit that at the time the police officer pulled in that it was an arrest. The distinction between custody and arrest in this particular case is best demonstrated by the Washington case from this circuit. In that particular situation, Mr. Washington was stopped. He and the officer engaged in discussion. They walked around for a little bit. It did not turn into an arrest, however, until they ---- another police officer positioned himself in a fashion so as to block Washington's return to his vehicle. The Court there indicated that there were a series of factors that go into this analysis. One is the authoritative tone or manner in which the officers approach and act. Second, the number of officers. Third, whether weapons are displayed. Fourth, whether it's a public or private location. And finally, whether the defendant has been advised of his right to terminate the event. In this case, I suggest that there was no advice of right to terminate. He was not free to do that in the authoritative tone or manner, way in favor of finding that there was an arrest at the moment the officer ---- What was the authoritative tone or manner when he just pulled into the parking lot? I'm sorry. I did not hear you clearly. What would be the first element, the authoritative tone or manner? He didn't say anything. He just pulled into the parking lot. He pulled into the parking lot abruptly. He indicated that his actions basically startled the defendant. It was just his actions. You were going through that case, and one of the elements you mentioned is authoritative tone or action. Yes, and that's what I'm focusing on, Your Honor. He pulled in with the lights on. He pulled in abruptly and came to an abrupt stop. At most, it was eight feet. It's less than the podium is or just about what the podium is from the front of the courtroom or the bench. It's not a very big gap, and there was a car on one side or the body of the truck, the open door on the other side, and the police officer made the third leg of the triangle, and the defendant was in that. He was not free to move. He was not free to go about his business, and that's when the arrest occurred. What were the other elements that you mentioned in that Washington case? The number of the officers. Okay, there was just one. That's right. Whether weapons were displayed. Was there a weapon? No. No. Whether it was in a public or private place. It was public. It was public as it was in Washington, but I think the public nature weighs in favor of it being an arrest, because you've stopped somebody who is going about what they're doing. You haven't gone into a private place and just done it. You've done it very publicly. And then you've got the advice of the right to terminate, and that wasn't given. So that's why I suggest under Florida v. Bostwick and the Washington case, you've got an arrest. How could he have given that sitting in his truck? He could not have given that sitting in his truck. It was not his intention. It never was his intention to do anything other than arrest the person who was accessing the front of that vehicle. There is a policy in the city of Phoenix that they do not want vehicles they suspect of being stolen to go mobile. It's been testified to a couple different times by the officers at the trial, and they indicated at the motion to suppress hearing, I believe, that it was a hard and fast rule that you don't want vehicles to go mobile. You're going to stop whoever it is based on the probable cause that you have at that time. And in this case, they didn't have the probable cause. And that's because, again, tell me, did you say that? I'm sorry? And there was no probable cause because? Well, because they did not know when they knew that Murphy rented the truck, A. Murphy rented the truck. He knew that he had seen Murphy on another occasion. He did not know that the man at the back of the truck when he pulled in was Murphy. But I thought the district court judge – that's the problem that I – well, maybe I need to take a – maybe I need to take a close look at the district court judge's ruling or the testimony at the suppression hearing. But I thought the district court judge found that Jacobs saw Murphy and knew that he was Murphy. The district judge in his ruling, and I believe it's in volume one of the excerpt, said that he identified him as Murphy and placed him under arrest. That doesn't discuss what we're talking about now.   The district court judge in his ruling said that he identified him as Murphy and placed him under arrest. Only upon getting out of his cruiser, though, correct? That would be his – So when he pulls into the parking lot with lights blaring and so forth, he doesn't know that the guy he's going after is indeed this Murphy guy, right? No. No. And I believe the evidence was at that point that the individual was leaning into the truck. He was in the – he was extending into the cab of the vehicle and he turned around, was startled to see the vehicle behind him. All right. Thank you. I need to read the transcript more carefully. Thank you. Okay. Thank you very much, counsel. The matter is submitted at this time. We appreciate your arguments. Thank you.
judges: Watson, Hug, Paez